## JAMES M. MALONE *v.* JOHN B. BARKER and another.

There is nothing in the laws of this State to prevent property from being held in trust for the use of another, where all parties interested assent ; and such a naked trust, to be executed within a reasonable period, does not amount to a substitution.

A trustee, who claims property in this State, under a deed of trust executed in another for the benefit of a third person, will not forfeit his rights thereto by granting a delay to the debtor, any more than a mortgage creditor by giving time to his debtor·

APPEAL from the District Court of the First District, *Buchanan,* J.

GARLAND, J. The plaintiff alleges that he is the owner of a female slave named Frances, and her child George, and that the

defendants illegally retain possession of said slaves, pretending. to have a title to them. It appears that Isaiah D. Fuller, to whom. the slaves once belonged, on the 1st of May, 1835, gave his promissory note to one Robert A. Douglass for $6,215 50, payable thirty months after date, which note was subsequently assigned to Abraham Douglass, and that on the 7th of October, 1837, Fuller made an instrument in writing, commonly called a deed of trust, whereby he conveyed to the plaintiff the slave Frances, with several others, and a variety of personal property. The deed purports to convey a full title, recites the execution and transfer of the note, and then states that the conveyance is made " in trust, however, and to the intent and purpose that if the said promissory note, herein before mentioned, shall be and remain unpaid on the 1st of January, 1839, then he, the said Malone, shall proceed to sell and dispose of, at public sale, for cash, all the personal property hereby conveyed, giving ten days previous notice thereof, in some newspaper printed in the city of Mobile, and with the money arising from the sale, after deducting his reasonable costs and charges, shall pay and satisfy the said note ;" and any surplus that may remain is to be returned to said Fuller. Various credits are endorsed on the note, appearing to be the proceeds of the property conveyed, which, with the exception of two slaves, was sold before the time specified in the trust. The plaintiff alleges that more than $2000 is yet due on the note. Neither the note nor deed of trust appears to have been executed in the presence of witnesses, nor did the endorsee or payee of the note sign it ; but the instrument was admitted by Fuller and Malone, in the presence of a notary, to have been executed by them, and on his certificate of the fact, it was recorded in the office of the clerk of the County Court of Mobile county, Alabama, where Fuller resided.

The facts that George is a child of Frances born since the execution of the deed of trust, that the woman is the same mentioned in it, and that she belonged to Fuller, are admitted or fully proved.

On the 1st of October, 1838, Frances was sold by the sheriff of Mobile county, (George not having been then born,) under an execution against Fuller, Garner & Co., of which firm J. D. Fuller was a partner, to Jane Remgeard. It does not appear that any thing was said at the sale about the deed of trust, either by Fuller,.

the sheriff, or by any other person. The purchaser took possession of the woman, and sometime after, sold her to Wood, who afterwards sold her to H. Gates, from whom, in April, 1840, she was purchased, with her child, through an agent, by Joshua Baker of the Parish of St. Mary, under whom the defendants hold possession, and defend this suit as his agents.

The answer of the defendants sets up the different conveyances under which they hold, all of which are in the record. They allege and prove a purchase in good faith for a fair price; and the agents of Baker swear that when he made the purchase he did not know of the existence of the deed of trust, which it is alleged is collusive, simulated, and fraudulent, and that the plaintiff is a party to the fraud.

On the trial, in addition to the foregoing facts, it was proved that such deeds as the one before us, are recognized by the laws of Alabama, and held sufficient to vest a legal title in the property conveyed. That when executed under seal and recorded, they import a consideration, and are valid against third persons, unless a *prima facie* case of fraud is made out; nor is it considered necessary that the trustee should have possession of the property. It was further shown that Fuller and Abraham Douglass, the assignee of the note, and the person to be benefited by the trust, are brothers-in-law. In January, 1839, when some of the negroes mentioned in the deed were sold by the trustee, as it is pretended, A. B. Carver, a witness for the plaintiff, says that he bid in two, named Isaac and Salina, in the name of James D. Fuller, who is a son of Isaiah, the grantor in the deed, and about nine or ten years old. He says that he did this at the request of Isaiah D. Fuller, the father; that no money was paid; and yet we find on the back of the note a credit for $1220, the price of these two slaves, signed by Carver, as agent for Abraham Douglass, from which it would appear that he (Carver) had possession of the note at the time; and yet he swears that he was, at that time, the clerk of Fuller, the drawer of it.

The District Judge gave judgment for the defendants, on the ground that the plaintiff had forfeited the title vested in him by the deed, by his failure to proceed immediately to the execution of the trust; from which judgment he has appealed.

It seems well settled in the State of Alabama, that such a conveyance as the one under consideration, vests a legal title in the trustee, upon which he can recover the property in a court of law from one holding without title, or otherwise claiming an illegal possession. We have also held that there is nothing in our laws which prevents property from being held in trust for the use of another, when all the parties having an interest assent; and that such a naked trust, to be executed in a reasonable period, does not amount to a substitution. 5 Mart. N. S. 302. 4 La. 213. Conveyances of this description are used in other states of the Union, for the same purposes, generally, that the contract of mortgage is with us; and we see no more reason why a trustee should forfeit his right to the property conveyed to him, by not promptly executing the trust, than a mortgage creditor should lose his privilege on the property mortgaged by giving a delay of a year or more to his debtor, and letting the property remain hypothecated. We think the judge erred in supposing that, by the non-execution of the trust, the plaintiff lost his right to the property. But if the principle assumed were correct, the evidence in this case would not sustain its application, as it appears that the plaintiff did endeavor to sell the property conveyed, and the defendants in their answer allege that he had sold it; but there is no evidence that the sale was ever completed. By the terms of the trust the plaintiff was not authorized to proceed under it previous to January 1st, 1839. Within three weeks after that time, it appears that two of the slaves were sold to Fuller's infant son, and a large portion of the other property seems to have been sold before that period. The fact is that the manner in which the trust appears to have been executed, has excited a strong suspicion in our minds that every thing in connection with it is not entirely fair. Previous to January 1st, 1839, the plaintiff, as trustee, had no right to sell the property at all; yet we find credited on the note, the proceeds of the sale of different portions of it, made previous to that date. The understanding which seems to have existed between the parties in relation to the disposition of the property, the sale to the infant son of Fuller, the possession of the note by Carver the clerk of Fuller, the credit on it without any money being paid, and the fact that the slaves now in contest

were seized and sold by the sheriff of Mobile without objection, and remained one year and a half in that city, all go to make out such a *prima facie* case of fraud and simulation, as makes it imperative on us to call on the plaintiff to show the fairness of the whole of his transactions in relation to this matter, the consideration of the note from Isaiah D. Fuller to Robert A. Douglass and of its transfer to Abraham Douglass, the connection of the plaintiff with Isaiah D. Fuller, Robert A. Douglass and Abraham Douglass or either of them in business or otherwise, and also with the firm of Fuller, Garner & Co., the cause of the deed of trust being made, and why there were no witnesses to it, why the other property mentioned in the deed has not been sold and its proceeds applied to the payment of the note, why no money was paid for the slaves Isaac and Salina sold to John D. Fuller, and if any was paid, who paid it.

The judgment of the District Court is therefore annulled, and the cause remanded for a new trial, with directions to the judge to require evidence from the plaintiff to explain all of the aforesaid transactions, and otherwise to proceed according to law ; the defendant paying the cost of the appeal.

*Vason*, and *P. W. Farrar*, for the appellant.

*Micou*, contra.